IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

TINA BENEUX                                                                                         PLAINTIFF

v.                           Civil No. 2:14-CV-2202-MEF

CAROLYN COLVIN, Commissioner
Social Security Administration                                                                     DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Tina Beneux, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff filed her application for DIB on August 1, 2012, alleging an onset date of July 12, 2011[1], due to extreme fatigue, pain, panic disorder, depression, human immunodeficiency virus

---

[1] Plaintiff had filed a prior application for benefits, alleging an onset date of April 20, 2010. Tr. 67, 90-98. This application resulted in a final decision denying benefits on July 11, 2011.

("HIV"), general malaise, and concentration deficits. Tr. 200-206, 232, 241-242, 256. The Commissioner denied Plaintiff's applications initially and on reconsideration. Tr. 109-137, 141-145. An Administrative Law Judge ("ALJ") held an administrative hearing on August 26, 2013. Tr. 64-86. Plaintiff was present and represented by counsel.

At the time of the hearing, the Plaintiff was 38 years old and possessed a high school education. Tr. 19-20, 30, 68. Her past relevant work ("PRW") experience was as a cashier II. Tr. 19, 233-234.

On September 19, 2013, the ALJ found Plaintiff's asymptomatic HIV infection, major depressive episode, and panic attack disorder to be severe, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 12-14. After partially discrediting Plaintiff's subjective complaints, the ALJ determined she retained the residual functional capacity ("RFC") to perform light work involving simple, routine, and repetitive tasks; simple, work-related decisions with few, if any, changes; and, no more than incidental contact with coworkers, supervisors, and the general public. Tr. 14. With the assistance of a vocational expert, he found the Plaintiff could perform work as machine tenderer, assembler, and housekeeper. Tr. 20.

The Appeals Council denied the Plaintiff's request for review on August 20, 2014. Tr. 1-4. Subsequently, Plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. ECF No. 6. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 9, 10.

**II.     Applicable Law:**

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than

a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v.* Astrue, 638 F.3d 611, 614 (8th Cir. 2011).  We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id.*

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).  A Plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past

relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § 404.1520(a)(4)(v).

**III.   Discussion:**

Of particular concern to the undersigned is the ALJ's failure to develop the record concerning the Plaintiff's work-related limitations. The ALJ owes a duty to the claimant to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). He should "recontact a treating or consulting physician if a critical issue is undeveloped." *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010) (quotation, alteration, and citation omitted).

The Plaintiff suffers from HIV infection controlled via anti-retroviral medication, depression, and panic disorder. She contends that the combination of her mental impairments and the side effects of Atripla cause fatigue and impaired concentration making it impossible for her to stay on task and complete tasks in a timely manner. We note that Atripla is an anti-HIV medication that can cause serious psychiatric problems, drowsiness, dizziness, tiredness, trouble concentrating, and trouble sleeping. PDR HEALTH, *Atripla*, *at http://www.pdrhealth.com/drugs /atripla#side-effects* (last accessed October 1, 2015). Further, by definition, major depressive disorder requires the presence of either a depressed mood or loss of interest or pleasure in nearly all activities for a period of at least two weeks. *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS-5 163 (5th ed. 2015). "The individual must also experience at least four additional symptoms drawn from a list that includes changes in appetite or weight, sleep, and

4

psychomotor activity; decreased energy; feelings of worthlessness or guilt; difficulty thinking, concentrating, or making decisions; or recurrent thoughts of death or suicidal ideation. . . ." *Id*. Panic disorder, on the other hand, is characterized by recurrent, unexpected surges of intense fear or intense discomfort known as panic attacks followed by at least one month of persistent concern or worry about additional panic attacks or their consequences or a significant maladaptive change in behavior related to the attacks. *Id.* at 209. Interestingly, many individual suffering from panic disorder often anticipate a catastrophic outcome from a mild medical symptom or medication side effect, rendering them intolerant of medication side effects. *Id*. at 210.

The record is replete with notations of the Plaintiff's fatigue, depression, panic attacks, and impaired concentration. In June 2011, just prior to her onset date, Dr. Jimmy Acklin restarted her on Trazodone and Paroxetine following a three-month medication hiatus. Tr. 466-472, 549-550. At this time, she complained of insomnia, fatigue, decreased motivation, and depression. Dr. Acklin diagnosed worsening depression and panic disorder.

On September 24, 2011, the Plaintiff reported some improvement in her sleep habits due to the addition of Trazodone, but stated that her daytime anxiety persisted. Tr. 474-483, 553-563. Further, she disclosed a sense of great danger and panic, as well as some continued sleep disturbance. Dr. Acklin diagnosed "unchanged" anxiety and prescribed Buproprion in lieu of the Paroxetine.

On June 20, 2012, the Plaintiff felt that her antidepressants were not working. Tr. 495-505, 573-584, 593-603. She reported constant worry and anxiety with associated chest pain, difficulty sleeping, and anhedonia. Dr. Acklin's notes reveal that the Plaintiff was both anxious and depressed. He documented a deterioration in her depression and prescribed Effexor XR, Remeron, and Atripla.

5

In September 2012, the Plaintiff discontinued Effexor because her insurance did not cover it. Tr. 604-606, 617-621. She recounted persistent anxiety, depressed mood, and low energy. Dr. David King, an associate of Dr. Acklin's, noted that she appeared both anxious and depressed and prescribed Venlafaxine, Remeron, and Atripla.

On October 22, 2012, Dr. Marufa Zaman, another associate of Dr. Acklin, evaluated the Plaintiff. Tr. 607-610. She reported more frequent and intense panic attacks, occurring 2 to 3 times per week and lasting 25-45 minutes. Dr. Zaman diagnosed "deteriorated" panic disorder and prescribed Venlafaxine, Remeron, and Atripla.

In November 2012, the Plaintiff underwent a consultative mental evaluation with Dr. Robert Spray. Tr. 585-589. She reported an inability to work due to exhaustion, fatigue, and general malaise. The Plaintiff also complained of difficulty sleeping and recounted experiencing two to three panic attacks per week with associated rapid heartbeat, sweating, shakiness, and feeling as if she were going to die. Dr. Spray noted that she seemed somewhat anxious with a blunted affect. He diagnosed her with major depressive episode, panic attack disorder, and provisional borderline intellectual functioning, and assessed her with a global assessment of functioning score of 50-55. Dr. Spray then found she had moderate difficulty with attention and concentration. Further, he concluded that distractions and poor concentration may contribute to her inability to complete tasks in a timely manner, and opined that she would not be able to manage funds without assistance. However, the ALJ did not ask him to complete an RFC assessment or to elaborate on his statement concerning her "inability to complete tasks in a timely manner."

On July 22, 2013, the Plaintiff began seeing Dr. Rozan Razzouk, an associate of Dr. Acklin's. Tr. 638-640. She complained of persistent depression and anxiety with panic attacks

6

affecting her ability to focus and concentrate on a daily basis. Dr. Razzouk noted that her medications included Venlafaxine, Atripla, and Remeron.

This same date, Dr. Razzouk completed a medical source statement. Tr. 642-644. He indicated this was his first time to treat her. Her diagnoses included HIV infection, panic disorder, anxiety, and depression. As per the Plaintiff, Dr. Razzouk indicated that her symptoms were severe enough to interfere with her attention and concentration and to affect her ability to tolerate work stress. Further, he found she would need unscheduled breaks, need to lie down at unpredictable times, and would miss more than four days of work per month.

On September 26, 2013, the Plaintiff returned with persistent complaints of anxiety. Tr. 647-650. She also reported restlessness, irritability, difficulty concentrating, and chest tightness associated with her panic attacks. Dr. Razzouk assessed her with "deteriorated" anxiety and prescribed Fluoxetine and Atripla.

On November 5, 2013, Dr. Razzouk again diagnosed the Plaintiff with "deteriorated" depression. Tr. 656-659. He administered a patient health questionnaire used to screen, diagnose, and monitor the severity of her depression. Although the questionnaire is not included in the record, Dr. Razzouk noted that her score increased to 21, signifying both severe symptoms as well as a deterioration in her condition.[2] Accordingly, he increased her Fluoxetine dosage.

The Plaintiff's statements and testimony regarding her disability claim also support the symptoms documented in her medical records. On her adult function report, the Plaintiff reported the ability to perform a number of household tasks, but stated that she rests "when needed" and

---

[2] Typical symptoms rated on the PHQ-9 include level of interest or pleasure in doing things; feeling down, depressed, or hopeless; trouble falling or staying asleep or sleeping too much; feeling tired or having little energy; poor appetite or overeating; difficulty concentrating; feeling bad about oneself; and, thoughts of harming self or others. *See Patient Health Questionnaire*, *at* http://phqscreeners.com/pdfs/02_phq-9/english.pdf (last accessed October 1, 2015).

7

can only read books when she can focus. Tr. 243-250. Further, she has repeatedly listed extreme fatigue, panic attacks, depression, HIV, tiredness, sickness, and an inability to focus for long periods of time as the reasons for her inability to work. Tr. 232.

After reviewing the evidence of record, the undersigned has some concerns regarding the Plaintiff's ability to concentrate on and complete tasks in a timely fashion. Dr. Spray's comment that she is distractible and may be unable to complete tasks in a timely manner makes it clear that there is some impairment in this area of functioning. However, her exact level of impairment is unclear. And, without additional information, we cannot say that substantial evidence supports the ALJ's RFC determination or his findings concerning her ability to perform work as a machine tender, assembler, or housekeeper. These jobs undoubtedly require the ability to concentrate and meet production quotas. Therefore, the undersigned must remand this matter for further development of the record.

On remand, the ALJ is directed to obtain RFC assessments from Drs. Spray and Razzouk. In so doing, the ALJ should include questions that will aid him in determining how the Plaintiff's fatigue, concentration deficits, and difficulty completing tasks in a timely manner will affect her ability to perform work-related activities. He should also recall the vocational expert to testify concerning how these limitations will affect her ability to perform work that exists in the national economy.

**IV.     Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to

sentence four of 42 U.S.C. § 405(g).

DATED this 7th day of October, 2015.

/s/ *Mark E. Ford*
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE